986 F.Supp. 848 (1997)
Horacio D. LEWIS, Plaintiff,
v.
STATE OF DELAWARE DEPARTMENT OF PUBLIC INSTRUCTION, Pascal D. Forgione, Jr., State Superintendent, both individually and in his official capacity, Valerie Woodruff, Associate State Superintendent, both individually and in her official capacity, Jack Nichols, Associate State Superintendent, both individually and in his official capacity, Michael Ferguson, Acting State Superintendent, individually, and Iris Metz, Secretary of Education, in her official capacity, Defendants.
Civil Action No. 95-559 MMS.
United States District Court, D. Delaware.
November 20, 1997.
*849 Daniel L. McKenty of Wendelburg, McCullough & McKenty, P.A., Wilmington, DE (John H. Morris, Jr., Baltimore, MD, of counsel), for plaintiff.
Wendy A. Rising, Michael F. Foster, Deputy Attorneys General, State of Delaware Department of Justice, Wilmington, DE, for defendants.

OPINION
MURRAY M. SCHWARTZ, Senior District Judge.

I. INTRODUCTION
Plaintiff Horacio D. Lewis ("Lewis") brought a civil rights suit under 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1983, and 42 U.S.C. § 1981 against Defendant State of Delaware, Department of Public Instruction ("DPI") and three of its employees[1], both officially and in their individual capacities, alleging intentional discrimination and retaliation. Defendants filed a motion for summary judgment seeking to dismiss the complaint. This Court issued an Opinion, Lewis v. State of Delaware Department of Public Instruction, 948 F.Supp. 352 (D.Del.1996), allowing Plaintiff to proceed on his disparate treatment and retaliation claims under Title VII as against DPI and his § 1983 claims as against defendants in their individual capacities.
Thereafter, plaintiff filed a second Amended Complaint which included two newly added claims, Counts IV and V, against DPI and against a newly added defendant, Michael Ferguson ("Ferguson"), former interim State Superintendent for DPI. DPI and Ferguson now move the Court for summary judgment to dismiss Counts IV and V of the second Amended Complaint. The Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331. Summary judgment will be granted as to both Count IV and V of the second Amended Complaint.[2]

*850 II. THE AMENDED COMPLAINT AND ORAL ARGUMENT
Although not the Court's usual practice, it is necessary to examine not only the Amended Complaint, but also the remarks of John H. Morris, Esq. ("Morris"), plaintiff's counsel, during oral argument in order to determine what exactly Lewis is stating in his amended civil rights suit. In his second Amended Complaint, Lewis has brought two new charges: Count IV, designated "Failure to Find New Employment for Plaintiff Lewis" (Against Defendant State Department and Ferguson Only), Second Amended Complaint, Docket Item ("D.I.") 51, at 24, and Count V, designated "Unlawful Post Employment Retaliation" (Against Defendants State Department and Ferguson). D.I. 51, at 28. Each count will be considered separately.

A. Count IV

According to the Complaint, Lewis has brought a Section 1981 action against DPI (also referred to as "Defendant State Department") for depriving him, on the basis of his race, of the same right to make and enforce contracts as is enjoyed by all citizens. D.I. 51, ¶ 76. In addition, Lewis alleges a Section 1983 violation for racial discrimination and retaliation against Ferguson because Ferguson failed to treat him similarly to other similarly situated white employees. D.I. 51, ¶ 77. For damages, Lewis claims compensatory damages against DPI and both compensatory and punitive damages against Ferguson. D.I. 51, ¶ 78. Lastly, in the "Wherefore" portion of Count IV, Lewis holds out the possibility for any other relief including, but not limited to, injunctive relief the Court or a jury might deem proper. D.I. 51, at 28.
At oral argument on this motion, Morris advised that the Section 1983 claim was only against Ferguson. Motion Transcript of October 14, 1997, D.I. 74, at 3. However, Morris also stated, that although not in the Complaint, he intended to seek a Section 1981 action against Ferguson in his official capacity for injunctive relief. D.I. 74, at 3, 4. In addition, Morris stated, "Under 1983 and not 1981 for purposes of reinstatement as to the claims relating to the activities prior to ... Dr. Lewis' discharge from DPI." D.I. 74, at 3. Consequently, it would seem that under the Section 1983 claim against Ferguson, Lewis is asking for injunctive relief. That being said, in his amended complaint, Lewis states that he is seeking compensatory and punitive damages under the Section 1983 claim against Ferguson. Further, it is unclear whether Lewis wishes to hold Ferguson liable under Section 1983 in his official or individual capacity.
Giving Lewis the benefit of every doubt, and the Court has many of them, the Court assumes that Lewis is not seeking relief that is barred by the Eleventh Amendment, i.e., monetary relief against Ferguson in his official capacity. Moreover, although not at all clear to what Morris might be referring, he stated in regard to Count IV that, "we would be seeking relief against Defendant Ferguson only as to injunctive relief." D.I. 74, at 3. But in response to the Court's question, "So you are suing him only in his official capacity?", Morris responded, "As to 1981." D.I. 74, at 5. This statement seems to imply that he wished to bring the § 1983 action against Ferguson in his individual capacity for monetary damages. However, just before that response, Morris declared that, "That is one of the reasons why [Ferguson] is sued only in his official capacity." D.I. 74, at 5. The Court is at a loss to explain how this sequence of dialogue can be interpreted in a coherent manner.
Be that as it may, the Court again will give Morris and his client, Lewis, every benefit of the doubt. Because Ferguson in his individual capacity is not able to affect the equitable relief that Lewis seeks, i.e., a reinstatement at DPI, the Court will therefore limit Lewis' Section 1983 claim against Ferguson in his official capacity for injunctive relief and *851 against Ferguson in his individual capacity for monetary damages.
With that business out of the way, the Court turns its attention to Lewis' retaliation claim under Count IV. It is not clear whether Lewis wishes to allege a retaliation claim against Ferguson under § 1981 or § 1983 under Count IV. As to this theory of proceeding, Morris stated, "the retaliation claim here was brought under 1983 as to Ferguson in his official capacity," D.I. 74, at 71, and he agreed that his § 1981 claim against Ferguson did not rely on a retaliation theory. See id. However, as already discussed, Lewis would be unable to proceed against Ferguson in his official capacity for monetary damages because of the Eleventh Amendment. And again, it makes no sense for Lewis to bring a § 1983 action against Ferguson in his individual capacity for injunctive relief. Therefore, the retaliation claim under Count IV can be brought against Ferguson in his official capacity for injunctive relief and in his individual capacity for monetary relief.
Exiting from this labyrinth, the Court finds, at least as far as Ferguson is concerned, Lewis has alleged a Section 1981 action against Ferguson in his official capacity for injunctive relief and has alleged a Section 1983 action against Ferguson in both his official capacity for injunctive relief and in his individual capacity for monetary damages based on theories of both intentional race discrimination and retaliation.
Now turning to DPI, Lewis initially alleged a Section 1981 violation for compensatory damages. This allegation was at first reconfirmed at the beginning of the oral argument by Morris, with the caveat that Lewis was only seeking injunctive relief against DPI. D.I. 74, at 3, 4. However, Morris withdrew the Section 1981 claim against DPI for injunctive relief as to both Count IV and Count V. D.I. 74, at 27, 45. Morris took this action because he stated, "even for injunctive relief, the Eleventh Amendment would be a bar as to the State. So that as to a State agent or a State actor in their official capacity, it would not be." Id. Therefore, no action is now pending under Count IV against DPI.

B. Count V

In his the second Amended Complaint, Lewis seeks compensatory damages against DPI for violating Section 1981 by retaliating against him for complaining about race discrimination at DPI. D.I. 51, ¶¶ 88, 90. However, as already discussed, Lewis later dropped all his claims against DPI, including his Count V claim, recognizing that such relief would be barred by the Eleventh Amendment. See discussion infra. In addition, Lewis brought a Section 1983 claim against Ferguson for compensatory and punitive damages for post-employment retaliation. D.I. 51, ¶¶ 89, 90.
At oral argument, Morris clarified what Lewis was seeking under this Count. Morris conceded that Count V was only against Ferguson. D.I. 74, at 5. Moreover, Morris stated that Count V was just for money damages and that no injunctive relief was contemplated. D.I. 74, at 6. Therefore, it seems relatively clear that under Count V, Lewis is suing Ferguson in his individual capacity for compensatory and punitive damages under Section 1983 for post-employment retaliation.
To summarize, Lewis has brought two separate actions under Count IV and one action under Count V. Under Count IV, plaintiff has brought a § 1981 claim against Ferguson, then acting-Superintendent of DPI, in his official capacity, seeking appropriate injunctive relief for discriminating against him by not assisting him in finding a different position within DPI. In addition, under Count IV, Plaintiff has brought a § 1983 claim against Ferguson both in his official capacity seeking appropriate injunctive relief, and in his individual capacity seeking monetary damages, under intentional discrimination and retaliation theories of action. Lastly, under Count V, Plaintiff seeks to sue Ferguson in his individual capacity for compensatory and punitive damages for post-employment retaliation under § 1983 for "sabotaging" a job opportunity Lewis sought with the Red Clay School District ("Red Clay").

III. FACTUAL BACKGROUND
The Factual Background, resolving all disputed facts in favor of plaintiff because of the procedural posture, is limited to events that *852 underlie Count IV and Count V of the second Amended Complaint. Other facts underlying this lawsuit have already been examined in the Court's previous opinion in this case. See Lewis, 948 F.Supp. at 355-57.
Lewis, a man of African descent who was born in Panama, worked at DPI from 1977 to August 15, 1996. On February 15, 1996, Lewis was notified by then State Superintendent Pascal D. Forgione Jr. ("Forgione") that his contract would not be renewed because of the termination of a Title IV federal grant which provided funding for the Title IV programs administered by Lewis. Lewis' contract was set to expire July 1, 1996. Eight other employees were also informed that their contracts would not be renewed as the result of the termination of federal funding for their programs and positions. The eight other employees consisted of seven white females and one white male.[3]

Goals 2000 Position
In mid-May of 1996, Dr. Wayne Barton ("Barton"), the DPI personnel officer, posted a vacancy for an available position at DPI in the Goals 2000 program as an Educational Specialist in charge of "Goals 2000/Systemic Reform". At the time this position was open, some clerical functions of the position were being performed by an African-American female, Kelly Pitts. The position was posted, applications were accepted, and interviews were conducted. Applications were due by June 3, 1996 and the position was to take effect on July 1, 1996. Lewis did not apply for the position. His stated reason for not doing so was because the U.S. Department of Education had written to DPI on June 18, 1996. This letter, addressed generically to the "State Superintendent," suggested that staff funded under the soon-to-be defunct Title IV programs should be considered for other federal programs; the Goals 2000 program was one of those mentioned.
Because Lewis did not apply for the position or otherwise express interest in the program, he was not interviewed or otherwise considered for the position in the Goals 2000 program. Thirty-five applications were submitted and were reviewed by Associate Superintendent John Holton ("Holton"). Four candidates were selected to be interviewed by a three group panel that consisted of a white male, Holton, a white female, and a black male. The interviewing committee recommended a white woman for the position and Ferguson reviewed and ratified this recommendation. The person selected had also had her federal funding terminated and was the only such individual to apply for the Goals 2000 position.
Meanwhile, Forgione had accepted a Presidential appointment as Commissioner for the National Center for Educational Statistics in Washington D.C. in June of 1996. On June 19, 1996, Ferguson took over as interim State Superintendent until a permanent replacement could be found.
On June 27, 1996, Lewis asked Ferguson for his assistance in allowing him to continue his position at DPI in any capacity. Ferguson responded the next day by reinforming Lewis that the grant which funded his position had been terminated and that his last day at work would be August 16, 1996, pursuant to an extension granted by DPI.[4] In addition, Ferguson advised Lewis that Barton would be available to assist Lewis in his job search. Lewis found this response to be unsatisfactory. Lewis believed that a position did exist at DPI in the Goals 2000 program that would allow him to continue his Title IV work at the department.

Red Clay School District Positions
In the fall of 1996, after he had been terminated by DPI, Lewis was approached by the District Superintendent of the Red Clay School District, Dr. Robert Simons ("Simons"), for employment. Lewis applied for two positions in the Red Clay School District: supervisor of bilingual education and student relations specialist. Simons assured Lewis that he would recommend Lewis for at least one of the positions at Red Clay. Lewis was *853 also told by Theodore Blunt ("Blunt"), a Red Clay School District official, that he would be the recommended candidate and "that he saw no way that [Lewis] would not get the selection." Third Declaration of Plaintiff, D.I. 67, ¶ 32.
During a casual conversation with Simons, Ferguson gave Lewis an unsolicited, allegedly favorable recommendation for the positions for which he was being considered. However, at the last minute, Simons decided to recommend another person, who apparently had the coaching and recommendation of two other DPI officials[5], for the job of supervisor of bilingual education. As per its usual practice, the School Board followed Simons' recommendation. The job of student relations specialist was never filled due to a lack of funding.

IV. STANDARD OF REVIEW
Defendants are seeking summary judgment pursuant to Fed.R.Civ.P. 56. Under Rule 56, in order for the Court to enter summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R .Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "The substantive facts will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only if a fact might affect the outcome of the suit is it material. See id.
The non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case; and on which the party will bear the burden of proof of trial." See Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. The non-moving party cannot just rely "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). However, in a discrimination case, while a plaintiff will bear the burden at trial to prove discrimination, "the burden of persuasion on summary judgment remains unalterably on [the movant]." Sorba v. Pennsylvania Drilling Co., Inc., 821 F.2d 200, 202 (3d Cir.1987), cert. denied, 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988).
At this stage of the proceedings, the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249, 106 S.Ct. at 2510. In short, the Court resolves conflicting evidence in favor of the plaintiff, does not engage in credibility determinations, and draws all reasonable inferences in favor of the plaintiff. See Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir.1996) (en banc).

V. DISCUSSION

A. Count IV (Differential Treatment as to Assisting in Finding New Employment)

1. § 1981 Injunctive Relief Claim and § 1983 Discrimination and Retaliation Injunctive Relief Claim

Under Count IV of the second Amended Complaint, plaintiff has alleged that Ferguson has violated § 1981 by depriving plaintiff, on the basis of his race, of the same right to make and enforce contracts as is enjoyed by all citizens. See 42 U.S.C. § 1981. Specifically, Lewis is suing Ferguson, in his official capacity, for intentional discrimination under § 1981 for injunctive relief. In addition, Lewis contends that Ferguson violated § 1983 by discriminating and retaliating against him in violation of the Fourteenth Amendment of the Constitution. In particular, Lewis asserts that Ferguson did not assist in placing Lewis in a DPI job because Lewis did not accept Ferguson's settlement offer during an EEOC conciliation *854 conference.[6]
Lewis contends that the letter sent by the Secretary of Education should have alerted Ferguson that he was to take an active role in assisting Lewis to find an appropriate job within the Department. Lewis alleges that Ferguson's inaction can be traced to racial discrimination and retaliation. Ferguson responds that the letter from the Secretary in no way identified Lewis or even suggested that the Superintendent had to consider Lewis in filling any Title IV-type job opening. In addition, Ferguson asserts Lewis never applied for the Goals 2000 position and he was similarly treated in that no one who did not apply for that position was considered for that position. Lastly, Ferguson maintains that since he is no longer the Acting Superintendent, he cannot fashion any injunctive relief that Lewis may be seeking.
The Court holds Lewis cannot maintain either a § 1981 or § 1983, official capacity, injunctive suit against Ferguson for either alleged discriminatory or retaliatory acts. Under Rule 25(d) of the Federal Rules of Civil Procedure, in suits filed against an officer in an official capacity in which the named official ceases to hold office, an automatic substitution of the successor in office is provided for. See Fed.R.Civ.Proc. 25(d)(1).[7] Therefore, because Dr. Iris Metz ("Metz") is now the Secretary of Education within the State of Delaware[8], she must be, and is, automatically substituted for Ferguson as the proper party to the complaint.
In order for Lewis to maintain a suit against Metz in her official capacity for injunctive relief, Lewis must show continuation by the successor of the challenged policy or practice. See Mayor of the City of Philadelphia v. Educational Equality League, 415 U.S. 605, 622, 94 S.Ct. 1323, 1334, 39 L.Ed.2d 630 (1974); Spomer v. Littleton, 414 U.S. 514, 521 n. 9, 94 S.Ct. 685, 689, 38 L.Ed.2d 694 (1974); Sarteschi v. Burlein, 508 F.2d 110, 114 (3d Cir.1975). Lewis has not made such a showing on the record. Not only is Metz not mentioned in the Complaint, the record is silent as to Metz doing anything which could even act as a basis for injunctive or any other relief. Further, the injunctive relief sought against Ferguson for racial discrimination and retaliation is personal to actions or inactions on the part of Ferguson. Lastly, no charge is made in the record that the policy of DPI or the Department of Education is to follow the intentional practices alleged or that Metz has, or will, continue the alleged unlawful acts. See Spomer, 414 U.S. at 521-22, 94 S.Ct. at 689. The Supreme Court's conclusion in Spomer is also applicable in this case: "The plain fact is that, on the record before us, respondents have never charged [the substituted party] with anything and do not presently seek to enjoin [her] from doing anything." Id. at 522, 94 S.Ct. at 689.
The Court therefore finds, for purposes of official capacity suits, Metz is the substituted successor to Ferguson. Because there is no genuine issue of material fact that Metz's actions cannot be the basis for injunctive relief under § 1981 or § 1983, as a matter of law, defendant's motion for summary judgment will be granted as to plaintiff's injunctive relief actions under Count IV of the second Amended Complaint.

2. § 1983 Monetary Relief Claim

Under Count IV, Lewis has alleged two theories under § 1983, discrimination and retaliation, *855 on which he hopes to find Ferguson individually liable for money damages. These theories will be discussed consecutively.

a. Intentional Discrimination Theory

Ferguson asserts three basic arguments why his motion for summary judgment should be granted with respect to the § 1983 intentional discrimination action. First, Ferguson urges the Court to find that plaintiff lacks standing to pursue a claim under § 1983 because he fails to establish the "causation" prong of the standing analysis. Second, defendants argue that Ferguson is entitled to qualified immunity because his actions were objectively reasonable. Third, defendants assert that plaintiff fails to state a prima facie case for his claim for a denial of equal protection under § 1983 because Lewis failed to apply for the Goals 2000 position, that Ferguson was not the one responsible for plaintiff not getting the Goals 2000 position, and that plaintiff was treated in a like manner to similarly situated individuals. Because the Courts finds that Lewis has not made out a prima facie case, the Court need not reach the first two of Ferguson's arguments.

i. Prima Facie Case Analysis

The test for discriminatory intent under § 1983 is the same as that under Title VII. See Stewart v. Rutgers, The State University, 120 F.3d 426, 432 (3d Cir.1997) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 n. 1, 113 S.Ct. 2742, 2747 n. 1, 125 L.Ed.2d 407 (1993); Patterson v. McLean Credit Union, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989)). All claims of employment discrimination are evaluated under the "shifting burden" framework of the oft-repeated McDonnell Douglas/Burdine/Hicks cases and their progeny. See Hicks, 509 U.S. at 506-07, 113 S.Ct. at 2746-47; Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a prima facie case of discrimination. See id. A prima facie case of racial discrimination may be made out by establishing:
(a) he belongs to a racial minority, (b) he applied and was qualified for a job for which the employer was seeking applicants, (c) that despite his qualifications, he was rejected, and (d) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824.
Defendants contend that since Lewis never applied for the position, he cannot claim that he was intentionally discriminated against in not obtaining the Goals 2000 position. Not only that, but the letter received from the Secretary of Education was not sent until fifteen days after the application process for the Goals 2000 job had closed. Lastly, defendants point out that Lewis was treated similarly to those who also did not apply for the position.
Lewis contends that the Department of Education letter put DPI on notice that the federal department expected the Title IV functions that Lewis had performed to continue under an array of related programs. In addition, Lewis maintains that he had formally requested Ferguson's assistance after the letter was sent and informally requested assistance from Barton. Further, Lewis asserts in the past DPI's managers acted without following the formal application process. From this evidence, Lewis alleges that Ferguson's inaction on his requests for assistance was a result of Lewis' previously questioning the fairness of defendant's personnel decision making and as a result of Lewis refusing a settlement offer by Ferguson, made on the behalf of DPI at an EEOC conciliation conference.
For the reasons that follow, the Court concludes Lewis has failed to established a prima facie case under § 1983. The factors set out by the McDonnell Douglas Court are not an exhaustive or exclusive list by which a prima facie case can be established. Importantly, the Supreme Court held that this showing "may be done" by showing the four *856 elements of the prima facie case listed above. See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824 (emphasis added). Therefore, the fact Lewis did not apply for the position is not necessarily fatal to his action.
That being said, the purpose of the prima facie case is to "eliminate the most common nondiscriminatory reasons for the plaintiff's rejection." See Burdine, 450 U.S. at 253-54, 101 S.Ct. at 1093-94. By not applying, plaintiff has failed to eliminate the most common nondiscriminatory reason for his not receiving the Goals 2000 job; that is, he did not apply for the position and only those who applied were considered for this position. This case might have been different if Lewis were able to offer evidence that other individuals who did not apply for this position were nevertheless considered for the vacancy. Whatever DPI's employment hiring practices might have been in the past with respect to following application procedures, the Court is convinced from the record that this position was filled according to the rigorous requirements of the job selection process.
Further, Lewis' contention that he thought he would be considered for the position after the Secretary of Education's letter was sent rings hollow. Lewis should have known that without applying for the Goals 2000 position before the application deadline of June 3, 1996, he could not be considered for the position regardless of what subsequent actions were taken by actors outside the application process. Simply put, Lewis cannot explain away the fact that he just did not apply for the Goals 2000 position. Like others who did not apply for the position, his candidacy was not considered.
In addition, the Court is unpersuaded that the Department of Education letter in any way mandated that Lewis be considered for the Goals 2000 position. The letter came almost three weeks after the application period had closed and merely suggested that individuals such as Lewis be considered for a myriad of positions, one of which was the Goals 2000 position. Furthermore, Lewis expressed interest in a position was not apparent until June 27, 1996, four days before the new job was to be filled. Although Ferguson's answer to Lewis' request may have been unresponsive, it is by no means clear that Ferguson would have had any authority to consider Lewis for the position outside the application process. Ferguson's role as Superintendent was only to review and ratify the decision of the reviewing board.
For the foregoing reasons, Lewis has failed to establish a prima facie case that he was discriminated against in violation of § 1983 and therefore, the discrimination claim against Ferguson in his individual capacity for monetary damages will be dismissed.

b. Retaliation Theory

Lewis alleges that Ferguson retaliated against him by making sure that he did not get the Goals 2000 position at DPI. Lewis asserts this retaliation was the result of his filing a charge of discrimination with the EEOC and refusing to accept an offer of settlement from Ferguson, who was acting on behalf of DPI at the EEOC conciliation conference. To establish a prima facie case of retaliation, plaintiff must show (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action subsequent to or contemporaneously with such activity; and (3) a causal link exists between the protected activity and the adverse employment action. Delli Santi v. CNA Ins. Companies, 88 F.3d 192, 198 (3d Cir.1996).
Although skeptical as to whether a prima facie case can been made out by Lewis, the Court must first consider a preliminary question: Whether it is permissible to bring a retaliation in the workplace claim under Section 1983. If this question is answered in the negative, the prima facie case need not be addressed. Lewis apparently relies on the equal protection clause of the Fourteenth Amendment as the vehicle by which he hopes to bring his retaliation action.
Retaliation claims are based on language in the Title VII retaliation provision which states that:
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants *857 for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
42 U.S.C. § 2000e-3 (1994). Such language is obviously absent from the equal protection clause of the Fourteenth Amendment; however, the crucial question is whether the equal protection clause can be construed to cover retaliation claims as they are defined under Title VII.
The Court is guided by the case of Smith v. Robinson, 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984), where the Supreme Court declared that, "We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for a substantial equal protection claim .... Nevertheless, § 1983 is a statutory remedy and Congress retains the authority to repeal it or replace it with an alternative remedy. The crucial consideration is what Congress intended." In these types of actions, the issue then is whether, in employment actions, an equal protection claim under section 1983 was expressly replaced with an alternative remedy; that is, the Title VII anti-retaliatory provision.
The Court is counseled by Great American Federal Savings & Loan Ass'n v. Novotny, 442 U.S. 366, 375-76, 99 S.Ct. 2345, 2350-51, 60 L.Ed.2d 957. In Novotny, the Supreme Court considered whether § 1985(3), a conspiracy statute which like § 1983 does not create substantive rights, could be used to assert a retaliation violation under Title VII. The Supreme Court commented that if the plaintiff was allowed to bring the Title VII retaliation claim under § 1985(3), "the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." Id. Similarly, if Lewis could bring his Title VII retaliation claim under the guise of an equal protection claim brought under § 1983, the administrative process that plays such a crucial role in the Title VII scheme would be bypassed and Congress' intent frustrated.
In addition, circuits which have considered this very same question have determined retaliation in the workplace by an employer is an action best remedied exclusively through Title VII. See Moche v. City Univ. of New York, 781 F.Supp. 160, 168 (E.D.N.Y.1992), aff'd without opinion, 999 F.2d 538 (2d Cir. 1993); Long v. Laramie County Community College Dist., 840 F.2d 743, 752 (10th Cir.), cert. denied, 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988); Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1205 (6th Cir.1984).[9] Persuaded by this line of authority, the Court holds that Lewis' § 1983 retaliation action is not actionable under the equal protection clause of the Fourteenth Amendment. Instead, this claim is more properly remedied through Title VII.[10]
Summary judgment will therefore be granted as to Lewis' § 1983 retaliation claim under Count IV of the second Amended Complaint.

B. Count V: Unlawful Post Employment Retaliation
Under Count V, plaintiff seeks monetary damages against Ferguson, in his individual capacity, for retaliating against him after he was terminated from his DPI employment. As a result, Lewis maintains he did not receive the positions he sought at the Red Clay School District. In particular, Lewis contends that this retaliation by Ferguson stemmed from his having filed a charge of discrimination against DPI with *858 the EEOC and his having rejected DPI's offer of settlement during the EEOC conciliation conference. Although far from clear, Lewis asserts that Ferguson was able to interfere with the Red Clay selection process so that Lewis was no longer the recommended candidate of Superintendent Simons and therefore, was not selected by the Red Clay Board of Education. Lewis urges this Court to allow a post-employment retaliation claim to proceed under § 1983. The Court declines this invitation.
The Court analyzed Lewis' "post-employment retaliation" allegation as a defamation action under § 1983. In other words, Lewis has claimed that Ferguson's actions deprived him of a liberty interest secured by the Due Process Clause of the Fourteenth Amendment to the Constitution. Specifically, Lewis alleges that Ferguson's comments to Simons inflicted a stigma to his reputation that seriously impaired his future employment opportunities.[11]
The Supreme Court has found that an individual has a protectable interest in his own reputation. See Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). However, in Paul v. Davis, 424 U.S. 693, 708-09, 96 S.Ct. 1155, 1163-68, 47 L.Ed.2d 405 (1976), the Supreme Court limited its Constantineau holding by stating that, "injury to reputation itself was not a `liberty' interest protected under the Fourteenth Amendment." In order "to make a claim out for a violation of a liberty interest in reputation a plaintiff must show a stigma to his reputation plus some concomitant infringement of a protected right or interest." Ersek, 102 F.3d at 83 n. 5 (citing Paul, 424 U.S. at 701, 96 S.Ct. at 1160).[12]
Although plaintiff has not alleged what "concomitant infringement of a protected right or interest" might have occurred, the Court will assume, for the sake of argument, that the only such protected right that could have been violated was Lewis' property interest in public employment at DPI. That being said, the Paul Court also held that to be actionable, defamation must "occur in the course of termination of employment." Paul, 424 U.S. at 710, 96 S.Ct. at 1164; Hadley v. County of DuPage, 715 F.2d 1238, 1246 (7th Cir.1983), cert. denied, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984) (defamatory statement must occur "at or near the time of employee's termination since that is when the liberty interest arises, if at all."). Here, the allegedly defamatory statements Ferguson made to Simons about Lewis did not occur until at least a month after Ferguson was terminated from DPI.[13] The Court finds that this alleged defamatory remark was not made "in the course of termination," and thus, there does not exist the requisite nexus between the allegedly defamatory statement and the date of Lewis' termination at DPI for the "stigma-plus" test of Paul to be met. See Hadley, 715 F.2d at 1247; see also Garner v. City of Chicago, 1986 WL 7351, at *3 (N.D.Ill. June 25, 1986) (statements made twenty-nine days after employee's discharge not in the course of employment). For the foregoing reasons, plaintiff has failed to allege a deprivation of a liberty interest under the Due Process clause.
Alternatively, based on the substance of the claim, Lewis has pled no evidence in the summary judgment record to challenge Ferguson's contention that he promoted *859 Lewis' candidacy in his discussions with Simons. To say that Ferguson must have adversely affected the selection process at Red Clay is mere suspicion. Because Simons recommended another candidate and the School Board has historically accepted those recommendations, the School Board's decision not to hire Lewis cannot be considered surprising. Therefore, even if a post-employment retaliation action were allowed to proceed under Section 1983, Lewis could not survive summary judgment because the mere suspicions of Lewis do not create a genuine issue of material fact that Ferguson in speaking to Simons was attempting to impede the possibility of Lewis obtaining a position with the Red Clay School District. Ferguson is therefore entitled to judgment as a matter of law.
The Court will grant defendant's motion for summary judgment as to plaintiff's § 1983 action for post-employment retaliation against Ferguson in his individual capacity for monetary relief.
An appropriate order will issue.
NOTES
[1] These employees are Pascal D. Forgione, Jr., former State Superintendent, Valerie Woodruff, Associate State Superintendent, and Jack Nichols, Associate State Superintendent.
[2] Defendants also requested the Court to strike numbered paragraphs 73 and 74 from plaintiff's second Amended Complaint and paragraph 22 of Plaintiff's Third Declaration as immaterial pursuant to Fed.R.Civ.P. 12(f) and inadmissible pursuant to F.R.E. 408 because it discusses settlement offers by DPI to Lewis during an Equal Employment Opportunity Commission ("EEOC") conciliation conference. Because of the disposition of the summary judgment motion, the request to strike need not be addressed.
[3] One employee was awarded an extension of her federal grant until February 27, 1997, under the auspices of the National Science Foundation.
[4] Lewis asserts that the extension to August 16, 1996 had to be granted because the department had a six month termination notification policy and Lewis had not been informed until February 16, 1996.
[5] These other DPI employees were Sister Margaret Loveland, Education Specialist, and Rebecca Scarborough, Education Associate.
[6] These actions do not run afoul of the Eleventh Amendment to the Constitution because a plaintiff is not barred from bringing a suit against a state officer, in his official capacity, for injunctive relief for violation of a plaintiff's federal right. See U.S. Const. Amdt. XI; Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
[7] Rule 25(d)(1) reads:

When a public officer is a party to an action in his official capacity and during its pendency ... ceases to hold office, the action does not abate and the officer's successor is automatically substituted for the party. Proceedings following the substitution shall be in the name of the substituted party .... An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.
Fed.R.Civ.Proc. 25(d)(1).
[8] Both the State Superintendent position and the Department of Public Instruction have been replaced by the Secretary of Education and the Department of Education, respectively.
[9] Plaintiff cites the case of Arnett v. Davis County School Dist., 1993 WL 434053 (D.Utah April 5, 1993), for the proposition that it may bring its retaliation claims under § 1983. However, a closer reading of Arnett makes plain that although plaintiff could bring her claims of discrimination under § 1983, plaintiff could not bring her retaliation claims under § 1983. See Arnett, 1993 WL 434053, at *4.
[10] This holding is consistent with the Court's previous Opinion in this case. There, Lewis was allowed to proceed under Title VII with his retaliation claims against DPI because he established enough of a causal link between the filing of an EEOC charge and the denial of promotion in 1995 to survive summary judgment. See Lewis, 948 F.Supp. at 364.
[11] Lewis' complaint does not lucidly inform the Court under what aspect of the Constitution he is bringing his "post-employment retaliation" claim. However, because similar cases of post-employment retaliation have been analyzed under a due process analysis, the Court finds the Due Process Clause to be the most likely candidate. See, e.g., Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); Ersek v. Township of Springfield, 102 F.3d 79 (3d Cir. 1996).
[12] This "plus element" is commonly referred to as the "reputation-plus" or "stigma-plus" requirement. See Ersek, 102 F.3d at 83 n. 5.
[13] It is alleged in plaintiff's Third Declaration, that he was approached by Simons in the "Fall of 1996" about possible employment at the Red Clay School District. Plaintiff was terminated from DPI on August 16, 1996. Assuming that the fall of 1996 started on September 21, 1996, and Ferguson talked to Dr. Simons "subsequent" to Dr. Simons contacting Lewis, at least a month expired between the termination of Lewis and Ferguson's alleged defamatory remarks.