Ellen ERSEK,* Appellant,

v.

TOWNSHIP OF SPRINGFIELD, Delaware County; Anthony J. Grosso; Lee J. Janiczek; Thomas V. Mahoney; John J. McFadden; Kitty Jurciukonis; Bernard E. Stein; James Devenney, Individually and in their Official Capacities as Commissioners of the Township of Springfield; George A. Pagano, Individually and in his Capacity as Former Commis-

---

* Per the Motion of William Ersek's counsel and subsequent to Ersek's death, Ellen Ersek was substituted as Ersek's personal representative in her capacity as the executrix of Ersek's estate.

sioner of the Township of Springfield; Jo Ann Hunn, Individually and in her Capacity as Former Commissioner of the Township of Springfield; Michael T. Lefevre, Individually and in his Capacity as Township Manager of the Township of Springfield; Joseph Stumpf, Individually and in his Capacity as Chief of Police of the Township of Springfield; John W. Ryan, Individually and in his Capacity as Police Detective of the Township of Springfield; James F. Devaney, Individually and in his Capacity as Police Officer of the Township of Springfield.

No. 95–1913.

United States Court of Appeals, Third Circuit.

Argued June 3, 1996.

As Amended Nov. 27, 1996.

Decided Dec. 9, 1996.

Sur Petition for Panel Rehearing Jan. 17, 1997.

Harold I. Goodman (argued), Raynes, McCarty, Binder, Ross & Mundy, Philadelphia, PA, for Appellant.

Daniel J. Divis (argued), Dean F. Murtagh, German, Gallagher & Murtagh, Philadelphia, PA, for Appellees.

Before: BECKER and MANSMANN, Circuit Judges, and BROTMAN, District Judge.**

## OPINION OF THE COURT

BECKER, Circuit Judge.

William Ersek, a golf professional who suffered employment reverses incident to adverse newspaper reports about an investigation of his stewardship at a Township-owned golf course, brought a federal civil rights action, 42 U.S.C. § 1983, against the Township and a number of its top officials on account of false statements made by one of the officials about the matter. Ersek's appeal from the grant of summary judgment in favor of the defendants raises a number of interesting questions under § 1983. However, his claim founders because there is insufficient evidence to show that the false statements themselves caused him harm. Accordingly, we will affirm the grant of summary judgment for defendants.

### I.

From 1963 until the end of 1991, Ersek was employed as the golf professional at a municipally owned and operated golf course, the Springfield Country Club, in Delaware County, Pennsylvania. From 1963 until 1987, Springfield Township employed Ersek pursuant to successive one-year employment contracts. In 1987, Ersek signed a four-year contract. Ersek's duties as the Springfield golf pro were varied: he managed the pro shop and snack bar at the course, supervised the other employees at the course, and collected the fees for playing the course and renting the golf carts.

During the summer of 1989, a Township employee, responding to complaints by Ersek that construction on the golf course had resulted in a lower volume of paying golfers, counted the golfers on the course. The Township employee noticed that the number of golfers actually on the course did not correspond to the number of golfers Ersek reported to the Township. Michael Lefevre, the Township Manager and a defendant in the case, noticed the same discrepancies. The matter was referred to the Township police. After some investigation in the fall of 1989, the police decided to conduct surveillance during the spring and summer of 1990. The police inspection uncovered further discrepancies.

In August 1990, the police and Township employees notified the Township Board of Commissioners ("the Board"), a defendant in the case, of the results of their probe. Until that time, no member of the Board knew of the investigation. Bernard Stein, the President of the Board and also a defendant, informed the police that the Board would be willing to prosecute Ersek criminally if there were sufficient evidence to do so. After obtaining a search warrant, the police carried out a search of the pro shop and seized records stored therein. Ersek volunteered to the police that he kept additional records at his home. The police obtained a second search warrant and then made a search of Ersek's home, seizing documents stored there as well.

The Board discussed the Ersek case at a public meeting six days after the police searches. Stein read a public statement, earlier approved by the entire Board in executive session, concerning the case. Lefevre had also attended the executive session. The statement falsely claimed that the Board had not only been aware of the investigation since its outset but also had directed the entire undertaking. The admitted reason for the fabrication was to mislead the Township residents into believing that the Board had been pro-active in overseeing the golf course. The statement did not, however, refer to Ersek nor contain other false claims. After the Township meeting, local newspapers, and also *The Philadelphia Inquirer*, reported on

** Honorable Stanley S. Brotman, United States District Judge for the District of New Jersey, sitting by designation.

the investigations and ran stories referring to Ersek by name.[1]

Ersek had been suffering from health problems and, in the wake of the searches, did not return to work for several months. Although the Township continued to pay him for the time he spent away from the course, it moved to restructure the management of the course. For instance, the Township took control of the pro shop and responsibility for course employees.

Nearing the contract's expiration in 1991, the Township offered to renew Ersek's contract, but under substantially altered terms. The salary under the proposed contract would have been significantly less than that of the existing contract. Ersek refused to accept the terms of the proposed contract, and the Township hired a different golf professional.[2] Ersek then sought job interviews with other country clubs in the area, but to no avail. Ersek claims that the cloud placed over his head by the publicized investigation made securing employment at another golf course impossible.[3]

Ersek brought suit against the Township and against a number of Township officials alleging a variety of federal civil rights and pendent state law claims. In an initial order, the district court granted the defendants' motion to dismiss Ersek's substantive due process claims, and ordered Ersek to file an amended complaint to address deficiencies with respect to some of the other claims. *See Ersek v. Township of Springfield, Delaware County,* 822 F.Supp. 218 (E.D.Pa.1993). In so doing, the court held that the Township did not act arbitrarily or capriciously in offering Ersek a renewed contract under markedly different terms; considering Ersek's ill health and age (Ersek was 59 years old at the time), the court found it not unreasonable for the Township to act as it did. Ersek subsequently dismissed a number of defendants and abandoned a number of claims voluntarily.

In a later order, the district court granted the remaining defendants' motion for summary judgment as to all existing federal law claims. Relying primarily on *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) and *Clark v. Township of Falls,* 890 F.2d 611 (3d Cir.1989), the court held that Ersek could not make out a claim for a violation of procedural due process because he could not show that the Township's actions infringed on a constitutionally protected interest. Specifically, the district court held that the fabrications contained in the Township's public statement did not harm Ersek to the extent that they violated a liberty interest in his reputation. And, even if those fabrications had harmed him, the court continued, Ersek failed to adduce evidence that he suffered more than mere financial harm so as to rise to liberty interest. The district court also dismissed the pendent state law claims with leave to file them in state court.

Ersek appeals from the district court's final order granting summary judgment, and includes in his appeal the court's order dismissing his substantive due process claims. The case raises both federal questions and pendent state law claims, and the district court properly exercised its jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367; we

1. There is some factual dispute over whether the newspaper articles appeared before or after the Township meeting. The Record is not entirely clear on the matter—the dates of some photocopied newspaper articles are obscured. Because we are reviewing the grant of summary judgment in favor of the defendants, we will assume the truth of Ersek's assertions that the newspaper articles appeared only after the Township meeting.

2. Ersek claims that the Township offered to improve the terms of the proposed contract only if he agreed to waive any right he might have to bring a lawsuit. The Township denies this claim. We note this dispute only for completeness, and do not address it herein.

3. Ersek also submits that the factual basis of the investigation is false. According to him, discrepancies in the number of golfers playing on a given day and the number of golfers Ersek reported to the Township could be explained by the facts that Township employees—perhaps including Board members—played the course for free; that persons with rain checks played on days different from those on which they paid; and that certain groups played for free or for reduced rates. None of these persons would necessarily have checked in with Ersek prior to playing. Moreover, Ersek was never formally charged with any crime or other impropriety.

exercise appellate jurisdiction over this appeal of a final district court order pursuant to 28 U.S.C. § 1291. Our review is plenary as to the appeal both from the order granting summary judgment and that granting the motion to dismiss.

## II.

 We must perforce begin by considering whether Ersek had a protectible liberty interest sufficient to trigger due process protections.[4] The Supreme Court, in the seminal case of *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), recognized that an individual has a protectible interest in reputation. It stated that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437, 91 S.Ct. at 510. The Court then went on to strike down a state statute that failed to provide an individual with the opportunity to challenge a government official's posting notice that no one may provide alcoholic beverages to that individual because of his problems with alcohol. *Id.* at 439, 91 S.Ct. at 511. The inquiry is, however, more complicated today in light of intervening case law.[5]

 For government action to infringe the "reputation, honor, or integrity" of an individual, that government action first must involve a publication that is substantially and

4. Although he does not concede that he has no property interest at stake, Ersek limits his brief to, and the Township responds in kind to, the alleged liberty interest deprivation. We therefore deem the property interest issue waived and do not discuss the possibility that a property interest existed or that it has been taken away impermissibly.

Ersek also appeals the district court's dismissal of his substantive due process claims. However, even viewing the facts in the light most favorable to him, Ersek fails to provide evidence that the Township's actions violated any substantive due process rights that he may have had. To support a claim of a substantive due process violation, a plaintiff must show irrational government action or government action that is motivated by bias, some improper purpose, or bad faith. *See, e.g., Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685, 692 (3d Cir.1993). The record is simply devoid of action that could be classified as such.

In addition, the Township contends that all the defendants are immune from suit. Because we hold *infra* that there is no substantive violation, we do not reach the question of possible immunities.

5. The parties have made extensive submissions pertaining to the elements of a violation of a liberty interest in a plaintiff's reputation, which is a very close issue here. It is clear that to make out a claim for a violation of a liberty interest in reputation a plaintiff must show a stigma to his reputation plus some concomitant infringement of a protected right or interest. *See Paul v. Davis,* 424 U.S. 693, 701, 709, 96 S.Ct. 1155, 1160, 1164, 47 L.Ed.2d 405 (1976). This element is now commonly termed the "reputation-plus" or "stigma-plus" requirement. *See* Laurence H. Tribe, *American Constitutional Law* 701 (2d ed.1988). What satisfies that "plus," however, is uncertain. The facts of this case highlight two areas of this uncertainty.

First, it is not clear whether something less than a property interest, independently protected by the Due Process Clause, could be a sufficient "plus." Language in *Clark* may be read broadly to hold that the "plus" must be a protectible property interest. *See Clark,* 890 F.2d at 620. However, the Supreme Court's explanation of *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) in *Paul* seems to imply that the requisite "plus" may be less than a property interest. According to *Paul,* had the plaintiff in *Roth* adduced evidence of defamation, then he would have had a colorable due process claim. *See Paul,* 424 U.S. at 709–10, 96 S.Ct. at 1164–65. In *Roth,* however, the Court made clear that the plaintiff had no property interest at stake. *See Roth,* 408 U.S. at 576–78, 92 S.Ct. at 2708–10. In addition, in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Court, in footnotes, upheld a court of appeals' decision that a non-tenured employee without a protectible property interest in his job could nevertheless make out a claim for violation of a liberty interest in his reputation. *See id.* at nn. 10, 13. For a more detailed analysis of this issue, see *Doe v. U.S. Dep't of Justice,* 753 F.2d 1092, 1106–10 & nn.14–15, 18 (D.C.Cir.1985). Fortunately, we need not reach this difficult question here.

Second, it is not clear whether a demotion in rank, in contrast to an actual termination or discharge, is a sufficient "plus." Cases cited to us by both parties disagree over the matter. Without so holding, we implicitly assumed in *Clark* that a demotion would have sufficed. The courts in *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1486 (11th Cir.1992), *cert. denied sub nom. Deutcsh v. Oladeinde,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993) and *Mosrie v. Barry,* 718 F.2d 1151, 1161 (D.C.Cir.1983) seem to agree. However, the court in *Johnson v. Morris,* 903 F.2d 996, 999 (4th Cir.1990) reached a different conclusion, holding that an employer must terminate or discharge the plaintiff. We also need not decide this issue here.

materially false. *See Codd v. Velger,* 429 U.S. 624, 627–29, 97 S.Ct. 882, 883–85, 51 L.Ed.2d 92 (1977); *Fraternal Order of Police Lodge No. 5 v. Tucker,* 868 F.2d 74, 82 (3d Cir.1989). The principal relief to which an individual is entitled should the government's stigmatizing comments rise to the level of a due process violation is a hearing to clear his name. *See Codd,* 429 U.S. at 627, 97 S.Ct. at 883–84; *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573 & n. 12, 92 S.Ct. 2701, 2707 & n. 12, 33 L.Ed.2d 548 (1972).[6] If there is no factual dispute that "has some significant bearing on the employee's reputation," then a name-clearing hearing would serve no useful purpose. *See Codd,* 429 U.S. at 627, 97 S.Ct. at 883–84. In other words, the disputed or false statements must harm the plaintiff.[7]

█ In this case, Ersek claimed that false statements impaired his opportunities for future employment as a golf pro. Ersek has adduced ample evidence to create a genuine issue of material fact as to whether the publicity about the fact of an *investigation* did such harm. *See McKnight v. Southeastern Pennsylvania Trans. Auth.,* 583 F.2d 1229, 1236 (3d Cir.1978) (holding that harm to future employment possibilities may show sufficient stigma to allow a claim for a violation of a liberty interest).[8] That the publicity may have harmed Ersek is not, however, the end of this inquiry, because the harm must be caused by the falsity of the statements

and the fact of the investigation is true. Thus, we must now determine whether the false statements made by the Township affected Ersek's reputation.

It is undisputed that the public statement announcing the investigation at the Township golf course contained the false statement that the Board had known about and directed the investigation from its outset. Ersek contends that a public statement including such a fabricated claim could give rise to the false impression that the probe was a serious, nonroutine matter. It is not usual for a legislative body to be engaged in the investigation of possible criminal activities. In Ersek's submission, anyone learning of the Board's (false) involvement could conclude that Ersek's alleged misdeeds were of an unusual nature calling for extraordinary measures, and such a conclusion would have a significant bearing on Ersek's reputation because more serious allegations would likely engender more serious harm to an individual's reputation. Had the statement only mentioned the police involvement and omitted the Board's putative activity, the argument continues, there would be no cause to overstate the seriousness of the allegations.

We are unconvinced. As we have stated, Ersek must show that the false comments made by the Township caused him some harm. The problem with Ersek's argument is that the *only* false statements were that the Board had been heavily involved in the investigation at the golf course. Notwithstanding Ersek's protestations, we cannot imagine that such fabrications caused more

6. The law is unclear whether a plaintiff would be entitled to damages in addition to or in lieu of a hearing. We do note, however, that a name-clearing hearing might be insufficient to cure all the harm caused by stigmatizing government comments. For instance, injury to a plaintiff's reputation might be irreversible.

7. It should be noted that, unlike *Codd* and *Tucker,* Ersek disputes the truth of some of the statements made by the government, claiming that the Board had no involvement in the investigation when it began. Neither *Codd* nor *Tucker,* however, stand for the proposition that disputed statements, without more, will suffice as to this part of the analysis. Instead, the clear import of both cases is that the disputed statements must give rise to the harm. Otherwise, a hearing would be unable to clear the plaintiff's name. A hypothetical example on this point may be useful. Imagine that the government fired an employee and in so doing charged him

with impermissibly drinking Martinis on duty. If the employee disputes that he was drinking Martinis, claiming instead that it was Manhattans, then he will not be entitled to a name-clearing hearing under *Codd* and *Tucker.* The harm in the hypothetical example, if there is any at all, derives from the fact of the drinking, not the type of drink.

8. The Township claims that Ersek failed to request a name-clearing hearing and that such failure is fatal to his claim. Without holding that Ersek was required to do so, we note that Ersek's attorney, in a letter to the Township solicitor sometime after the statement but before the institution of suit, wrote that the Township never afforded Ersek an opportunity to respond to the fabricated statements. This is probably sufficient, notwithstanding Ersek's answer to an interrogatory after initiation of suit that he had not demanded a name-clearing hearing.

harm than would a statement that truthfully said that only the police and a few Township officials were investigating him. Should Ersek receive the hearing to which he claims he is entitled, the most for which he can seemingly ask in the hearing is the opportunity to show that the investigation was not conducted by the Board and that any inference that the investigation was unusual is incorrect. That hearing could not be used to prove Ersek's innocence.[9] He would still have hanging over his head the cloud of a police investigation. It seems fanciful that any golf course that refused to hire Ersek because of the statement actually given would now consider hiring him because only the police (and not the Board) were investigating him.

In sum, the false statements in this case simply have not caused Ersek harm that a name-clearing hearing could correct. It was the fact of the investigation, not who conducted the investigation, that might have injured Ersek's reputation. Because Ersek cannot dispute the fact of the investigation, a name-clearing hearing would be of no consequence to him. *Accord Homar v. Gilbert,* 89 F.3d 1009, 1021–22 (3d Cir.1996) (denying a procedural due process claim, in part based on the reasoning that the truthful disclosure of a pending investigation did not stigmatize the plaintiff); *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 970–71 (2d Cir.1988) (same).[10]

### III.

Because we conclude that no genuine issue of material fact exists as to Ersek's claim that the false statements made by the Township stigmatized him, the order of the district court granting the defendants' motion for summary judgment will be affirmed.

9. *Tucker* is not to the contrary. In *Tucker,* a city suspended police officers after the officers refused to submit to urinalysis tests. *See Tucker,* 868 F.2d at 76. The city also issued a press release explaining its actions. *See id.* at 76–77. In discussing the officers' liberty interests, the court theorized that, had the officers been able to put forth evidence showing that they did not use drugs, they arguably would have made out a due process claim. *See id.* at 83. In other words, the court in *Tucker,* at least in dicta, might have allowed the officers to prove their innocence at a name-clearing hearing. However, the statements and their context in *Tucker* differ from those in the present case. The court in *Tucker* made clear that a reasonable person examining the statements and the dismissals would conclude that the officers more likely than not used

The petition for rehearing filed by Appellant, having been submitted to the judges who participated in the decision of this court and no judge who concurred in the decision having asked for rehearing, the petition for panel rehearing is DENIED.

drugs. *See id.* at 83. In contrast, the Township statement could not fairly be read as to charge Ersek with theft. The statement is careful to mention that the investigation was just that, an investigation. Ersek could not, then, use the name-clearing hearing to prove his innocence because the Township had not charged him with anything.

10. This is not to say, and we do not hold, that the truthful disclosure of a pending investigation will always shield government actors from potential liability. If, for example, government officials began an investigation in bad faith or for improper motives, then the truthful disclosure of that investigation may be actionable. Such was not the case in *Homar* nor *S & D Maintenance* and it is not the case here.