DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Wood County Court of Common Pleas granting appellees' motion for summary judgment and dismissing appellant's complaint. For the following reasons, we affirm the decision of the trial court.
This matter arose as a result of appellant, Geneva Long, a classified civil service employee, being demoted by Bowling Green State University's ("BGSU") Disciplinary Recommendation Panel ("Disciplinary Panel") from "Budget Officer 1" to "Business Services Supervisor" on March 25, 1991. Appellant worked in the BGSU library and was responsible, in part, for maintaining the accounting records for the cash collections in the library from fines, copy machines, on-line searches, donations, and other small miscellaneous fees. In 1990, an internal audit conducted by BGSU disclosed that, during a two year period, over $73,000 was missing from these cash collections.
 STATEMENT OF THE CASE
Appellant appealed her demotion by the Disciplinary Panel to the State Personnel Board of Review ("SPBR"), pursuant to R.C.124.34(B). The SPBR held an eight day record hearing and heard testimony from twelve separate witnesses concerning appellant's performance and circumstances surrounding the library fund. In an eighty-one page "Report and Recommendation," the Administrative Law Judge recommended that the SPBR affirm appellant's demotion and found that appellant's reduction in pay and position was "reasonable, and perhaps even lenient, considering the totality of the circumstances set forth above." Appellant never appealed the SPBR's decision.
Following the SPBR ruling, appellant filed an action in the Court of Claims. Appellant also filed, on October 28, 1992, the present action in the Wood County Court of Common Pleas. Appellant sued each of the following in both their individual and official capacities: Roger Dennerll, director of public safety at BGSU; Rush Miller, dean of the library; and John Moore, director of personnel support services. Appellant also sued BGSU, c/o President Paul Oslcamp, and BGSU's Board of Trustees.
With respect to Dennerll, appellant claimed that, through correspondence with BGSU President Oslcamp, Dennerll defamed her, placed her in a false light, and wrongfully interfered with her employment relationship with BGSU. Appellant also claimed that Dennerll's defamatory statements deprived her of a liberty interest in her good name and reputation, in violation of Section 1983, Title 42 U.S. Code ("1983 action").
With respect to Miller, appellant asserted that Miller failed to make a full disclosure concerning his knowledge of the missing fund and, in so doing, also placed appellant in a false light, wrongfully interfered with her employment relationship with BGSU, and damaged her good name and reputation. Appellant additionally asserted that Miller failed to appoint a neutral/impartial panel member to the Disciplinary Panel convened for appellant's case, in violation of university procedures.
Appellant further claimed that she was denied a liberty interest because Moore and BGSU failed to disqualify Paul Yon, the Disciplinary Panel member who was allegedly unfairly appointed by Miller. On April 30, 1993, the case was stayed pending the outcome of the Court of Claims matter.
On December 12, 1995, the Court of Claims found that Dennerll was entitled to personal immunity because his actions were related to appellant's investigation and were within the scope of his employment, and that he did not act with malicious purpose, bad faith, or in a wanton or reckless manner. On June 30, 1997, the Tenth District Court of Appeals affirmed the decision of the Court of Claims and remanded the matter for further proceedings.Long v. Bowling Green State Univ. (June 30, 1997), Franklin App. No. 96API-12-1736 and 96API-12-1757, unreported. On May 13, 1998, appellant voluntarily dismissed her action in the Court of Claims without prejudice.
This matter was then reactivated on September 3, 1998. On December 29, 1998, appellees filed their motion for summary judgment. Appellees made a number of arguments in support of their motion, including, collateral estoppel; failure to state a Section 1983 claim; waiver; and qualified immunity.
Appellant responded to appellees' motion and acknowledged that the state tort claims against Dennerll, Moore, and Miller were no longer before the court by virtue of the immunity determination in the Court of Claims. With respect to the 1983 action, appellant argued that (1) the trial court had already overruled appellees' waiver argument and, alternatively, because only immunity was considered in the Court of Claims, no other causes of action were waived; (2) the BGSU handbook set forth her property interest in having a fair pre-disciplinary hearing before a neutral panel; (3) she was deprived of her property interest without a meaningful opportunity to be heard; (4) qualified immunity was not a defense to injunctive relief; (5) qualified immunity was not a defense available to the individual defendants; and (6) issue preclusion should not be applied because appellant did not have a full and fair opportunity to defend herself at the SPBR proceedings.
On March 26, 1999, the trial court granted appellees' motion for summary judgment. In agreement with appellant, the trial court found that it was without jurisdiction to render judgment on the state tort law claims because the Court of Claims had exclusive original jurisdiction to determine whether appellees were entitled to immunity. Therefore, only appellant's federal claims remained for consideration by the trial court.
The trial court initially held that BGSU was not a "person" capable of being sued pursuant to Section 1983 and, therefore, appellant could not maintain a 1983 action against BGSU or its officials acting in their official capacity. The trial court then turned to the issue of appellees' individual liability with respect to appellant's 1983 action. The trial court held that (1) appellant's due process claims were not decided by the SPBR and, therefore, the trial court could consider appellant's claims; (2) the SPBR decision had issue preclusive effect as it pertained to the reason for and the propriety of appellant's demotion; (3) the Tenth District's decision had issue preclusive effect with respect to the finding that Dennerll acted within the scope of his employment; (4) appellees were entitled to qualified immunity because they were acting within the scope of their discretionary authority and appellant failed to establish that their conduct violated clearly established law; and (5) even if appellees were not entitled to qualified immunity, appellees were entitled to summary judgment because appellant failed to establish a 1983 action.
As a result of the trial court's granting of summary judgment in appellees' favor, appellant raises the following assignment of error:
 "The trial court erred in granting summary judgment for Defendants-Appellees because:
 "(1) Defendants-Appellees were not entitled to summary judgment as a matter of law;
 "(2) Individual Defendants-Appellees Dennerll and Miller were not entitled to qualified immunity; and
 "(3) There were genuine issues of material fact for the jury."
 Assignment of Error No. 1 Property and Liberty Interests
Appellant argues on appeal that she was entitled to and denied both "property" interests in having continued employment and an impartial Disciplinary Panel, and "liberty" interests in her good name and reputation, and stated:
 "It is well-established that a public employee has a Fourteenth Amendment liberty interest in her good name and reputation as it affects her continued employment which, itself, is a protected property interest. Paul v. Davis (1976), 424 U.S. 693, 701; * * * Jackson v. Kurtz
(1979), 65 Ohio App.2d 152, 159, * * *."
Appellant further argues that she was denied these interests without due process of law because she was not provided a meaningful opportunity to be heard.
In order to establish a violation of a liberty interest in her reputation, actionable under a Section 1983 action, appellant asserts that she must show a stigma to her reputation,plus some concomitant infringement of a protected right or interest or that a status recognized by state law has been altered. Appellant alleges that Dennerll made per se defamatory statements in letters published to President Oslcamp and other university employees which supposedly stated that she was involved with "embezzlement" of the library funds and that she could be "indicted" for her involvement. Appellant argues that she established a viable "stigma-plus" claim because she was defamed by Dennerll through these statements and was then demoted as a result thereof. Appellant further argues that infringement upon her liberty interest occurred in two ways: (1) she was presently demoted as a result of the defamation; and (2) she suffers a continuing disability arising from the defamation because she is foreclosed from future employment opportunities.
Appellant also asserts that she was deprived of her property interests. Specifically, appellant argues that the BGSU Classified Staff Handbook ("employee handbook") assured her "of the right to a neutral and impartial hearing panel," which appellant asserts created a property interest. Thus, in addition to her property interest in continued employment, appellant asserts that she had a property interest in having a neutral and impartial hearing panel. According to appellant, Miller appointed a Disciplinary Panel member, Paul Yon, who was biased. Appellant asserts that Yon's alleged bias deprived her of a meaningful hearing; thereby depriving her of a property interest without due process of law.
 a. Property Interests
Appellant must prove two elements to establish a violation of Section 1983, Title 42 U.S. Code: (1) the conduct in question must be performed by a person acting under color of law; and (2) the conduct must have deprived appellant of a federal right.Gomez v. Toledo (1980), 446 U.S. 635, 640. Appellant had a property interest in continued employment, which she could not be deprived of without due process. This interest is created by R.C. 124.34(A), which states that no employee in the classified service of the state "* * * shall be reduced in pay or position * * * except * * * for incompetency, inefficiency, dishonesty, * * * neglect of duty, violation of this chapter or the rules of the director of administrative services or the commission, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of a felony." Cleveland Bd.of Educ. v. Loudermill (1984), 470 U.S. 532, 538-9. Due process requires that an individual be given an opportunity for a hearing before he is deprived of a property interest. Id.
at 542. Although a pretermination "hearing" is necessary, it need not be elaborate. The formality and procedural requisites for a pretermination hearing vary, depending on the importance of the interest involved and the nature of the subsequent proceedings.Id. at 545, citing, Boddie v. Connecticut (1971), 401 U.S. 371,378. "In general, `something less' than a full evidentiary hearing is sufficient prior to adverse administrative action."Loudermill at 545, citing Mathews v. Eldridge (1976), 424 U.S. 319,343. The essential requirements of due process are notice and an opportunity to respond. Loudermill at 546.
Appellant was provided a pretermination hearing before the Disciplinary Panel and, therefore, was given notice and an opportunity to respond. As such, we find that she was not denied her property interest in continued employment, without due process of law. See Loudermill, supra.
Appellant, however, asserts that she had a property interest in her right to a neutral and impartial Disciplinary Panel at her pre-disciplinary hearing, as provided for in the employee handbook, and that appellees' failure to provide her with a neutral panel deprived her of this property interest. The employee handbook stated that the Director of Personnel Services will notify the department involved to "select a neutral/impartial panel member who is presently an employee of the university, but who has no previous involvement in the proposed disciplinary action."
For the sake of argument, we will assume that the employee handbook created a property interest as a result of a mutually explicit understanding. The effect of this "property" interest would be that appellant would be entitled to notice and an opportunity to be heard in the event that a neutral panel was not provided. However, before such a hearing would be required, appellant must establish that she was deprived of an impartial panel. We find that appellant failed to make such a showing.
Appellant's only evidence of Yon's bias was contained in an affidavit prepared by her approximately eight years after the alleged incident, and attached to her memorandum in opposition to appellees' motion for summary judgment. Appellant stated in her affidavit:
 "Miller, as dean, was the head of the Library and Learning Resources Council (LLRC). During an LLRC meeting at which Yon was in attendance, which meeting occurred before Affiant's pre-disciplinary conference, Miller made the comment to all in attendance that there was money missing `that we have found the culprit and we are transferring her out.' Affiant was transferred to a different office and location on January 19, 1991.
 "Affiant overheard part of a conversation between Paul Yon and Defendant Miller which took place in June, 1990. She heard Miller tell Yon about the missing money. He mentioned Plaintiff's name and pointed at her office."
With respect to the first paragraph, appellant failed to state that it was based upon personal knowledge. The statement, therefore, cannot be considered as it does not comport with the requirements of Civ.R. 56(E). With respect to the second paragraph, even assuming that Miller informed Yon that he suspected appellant was responsible for the missing funds (which was not, in fact, what appellant attested), such a statement does not establish that Yon was biased or that he was previously involved in the proposed disciplinary action. We will not presuppose bias merely because Yon may have been made aware of the situation prior to the initiation of disciplinary proceedings. Accordingly, because there was no showing that Yon was biased, there was no deprivation of a property interest, and therefore, no requirement for notice and hearing.
Moreover, had there been any bias, it would have been ferreted out in the post-termination, adversary, trial-type, de novo
hearing of the SPBR, and corrected. See Duchesne v. Williams
(1988), 849 F.2d 1004, 1008. However, in this case, after a full hearing before a neutral Administrative Law Judge, the SPBR concluded that appellant's demotion was justified.
Accordingly, we find that appellant failed to establish that she was deprived a property interest without due process of law. Having failed to establish the second prong of a 1983 action, we find that appellant failed to state a viable cause of action in this regard.
 b. Liberty Interest
With respect to appellant's liberty interest claim, we find that appellant failed to establish that she was deprived of a liberty interest or that she was deprived due process of law.
Where a person's good name, reputation, honor, or integrity is at stake because of government action, notice and an opportunity to be heard are essential. Board of Regents of State Colleges v.Roth (1972), 408 U.S. 564, 573. However, defamatory statements affecting one's reputation alone are insufficient under Section 1983, 42 U.S. 1983, to invoke constitutional guarantees of due process. Paul v. Davis (1976), 424 U.S. 693, 701. There must exist some infringement on a tangible, protected interest, such as employment, in order to invoke a liberty or property interest; damage to one's reputation alone is insufficient. Id.; Ersek v. Township ofSpringfield (1996), 102 F.3d 79, 83, fn. 5. Where a defamatory statement creates a stigma to one's reputation and infringes on a protected interest, the due process afforded a plaintiff is notice and the opportunity to refute the charge and clear her name. Roth at 573.
To infringe on a plaintiff's reputation, the government action must involve a publication that is substantially and materially false. Ersek, supra at 83-84, citing Codd v. Velger
(1977), 429 U.S. 624, 627-29. Also, "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." Chilingirian v. Boris (1989), 882 F.2d 200, 205-06, fn. 8, citing Lake Michigan College Fed'n of Teachers v. LakeMichigan Community College (1976), 518 F.2d 1091, 1096.
First, we find that, read in their entirety, Dennerll's statements were not defamatory per se, as appellant contends. The alleged defamatory statements were contained in memoranda between Dennerll and President Oslcamp. Appellant quoted Dennerll's statements in an August 3, 1990 memorandum as follows:
 "That Geneva Long who was responsible for these students had stopped reconciling the books. The results of the audit . . . indicated that a pattern had developed in the missing funds which appeared to be similar in nature to embezzlement as I understand it from past investigations."
This statement is improperly quoted, the actual statement was quite lengthy and stated, in part, as follows:
 "* * * When Dr. [Eloise Clark, Vice President for Academic Affairs] questioned [Miller] as to why he waited to notify her [of the missing funds] and as to how this could happen, he responded that he was not sure the funds were missing and that it might be an accounting error and proceeded to relay to her that students had been making deposits without supervision and that Geneva Long who was responsible for these students had stopped reconciling the books. * * * Dean Miller identified Geneva Long as the person responsible for these funds but further stated that there were numerous keys throughout the office for the safe and that everyone within the office had access to the safe when cashing personal checks for the Center's employees. Rush Miller also stated that he had repeatedly requested of June, the office receptionist, to hide the keys in a different place every night but this practice was, in fact, not being followed.
* * *
 "On July 16, 1990 I received a copy of the audit of Library Cash Collections conducted by Lori Schrickel, Director of Internal Auditing, * * *. The audit covered the period of July 1, 1988 through June 26, 1990. Based on the results of the audit work described, a shortage appears to exist between receipts and deposits for fiscal years 1988-89 and 1989-90. The discrepancy including stated audit adjustments was $73,042.22.
 "I interviewed Lori Schrickel on July 16, 1990 at 1:30 p.m. as to the results of the audit which, in fact, indicated that a pat tern had developed in the missing funds which appeared to be similar in nature to embezzlement as I understand it from past investigations. I questioned her ability to testify to the facts and verify the methods used if needed in a court of law. She stated that from the information provided to her she would be able to document her methods and the procedures used in this audit. She also informed me that a final report from her office with recommendations would be forth coming. On August 2, 1990, Dr. Clark requested a month-to-month analysis for a five-year period.
 "On Tuesday, June 19, 1990 at 10:00 a.m. I interviewed Geneva Long in Dean Miller's office. Geneva Long is the Assistant to the Dean for Budgeting at the Library and Learning Resources Center. It should be noted that at this point that an interview only as to the facts was conducted because no criminal report had been made of these events; thus, there was no way to focus in on a suspect or suspects at this time. In response to my question as to how a situation like this could go on for two years without being reported, Geneva stated that, in fact, she knew she was responsible for the funds but due to a lack of communication and access to the safe had stopped reconciling the funds and the amounts deposited. * * * She stated that everyone within the Dean's office had access to the safe, therefore, she could no longer be responsible for the safekeeping of the funds." (Emphasis added.)
Dennerll further stated that interviews with all personnel who had access to the safe had been arranged. When read in its entirety, Dennerll clearly did not single out appellant as a suspect in embezzlement; rather, he indicated that the pattern in which the funds had been depleted resembled a scheme of embezzlement. Dennerll's memorandum further indicated that appellant was not a suspect by stating that a number of people in the dean's office had access to the safe; there were a number of keys to the safe; the keys were not hidden away at night; there were no suspects at the time; and interviews with all personnel involved were being conducted.
Appellant also alleged that Dennerll's statement in his August 7, 1990 memorandum, "It would appear that there are thosewithin the Dean's office who have accepted criminal liability," was defamatory because it implied she was guilty of criminal conduct, i.e., embezzlement. This quotation, however, was also taken out of a lengthy context. Read in context and in conjunction with Dennerll's testimony before the Court of Claims, although "criminal liability" was not the best choice of words, it is clear that Dennerll was referring to the fact that appellant's inaction in performing her job duties allowed this situation. As it turned out, appellant was disciplined for this failure to perform her duties.
Finally, appellant quoted Dennerll's October 31, 1990 memorandum, as follows:
 "It is suggested that the next logical step in this investigation would be to present the information obtained to the grand jury of Wood County and subpoena Geneva Long to testify as to her knowledge and additional facts which she claims to have but refuses to divulge. The grand jury's purpose would be to review the facts in this matter. It is the opinion of the Wood County Prosecutor, Alan Mayberry, that there is sufficient evidence to indict Geneva Long at this time."
It is undisputed that Alan Mayberry did not feel there was sufficient evidence against appellant to "indict" her. However, when read within the context of the entire memorandum, it is clear that appellant was not a suspect, but that it was believed she had additional information concerning the funds that she was not divulging.[1] When read in conjunction with Dennerll's testimony before the Court of Claims, it is clear that Dennerll believed the grand jury could illicit the information appellant possessed, not that a grand jury would return an indictment against appellant for embezzlement.
Given the foregoing, we find that appellant failed to establish that Dennerll's remarks were defamatory per se. Nevertheless, assuming her reputation was stigmatized, appellant failed to establish that this alleged defamation infringed upon her right to continued employment, without due process of law. Appellant alleges that Dennerll's statements caused her demotion, and, in the future, would infringe upon her freedom to take advantage of other employment opportunities. The later alleged infringement, however, was not substantiated by any evidence in the record. Accordingly, appellant failed to establish the kind of foreclosure of opportunities required to amount to a deprivation of liberty. See Roth, 408 U.S. at 574.
Assuming, however, that she was demoted because of Dennerll's statements, we find that she was afforded all the due process to which she was entitled. See Id. Appellant was provided not one, but two, opportunities to clear her name. Appellant had two hearings at which she had the opportunity to present her position concerning her performance of duties relating to managing and tracking the funds, the whereabouts of the missing funds, or any other related matter. Both the Disciplinary Panel and the SPBR heard testimony and made independent determinations. Accordingly, even if Dennerll's statements were defamatory and deprived appellant of a liberty interest in her good name and reputation, and caused her to be demoted, appellant was afforded due process and, therefore, failed to establish the second prong of a 1983 action. See Gomez, supra.
Moreover, the SPBR decision makes no mention of the fact that the language in the memoranda was presented, or even relied upon, at that hearing. Therefore, it is unclear how the allegedly defamatory statements caused appellant to be demoted. Even without Dennerll's statements, it was nevertheless deter mined that appellant failed to fully perform her duties. Also, consistent with all the testimony presented, appellant was never accused of or found to have embezzled the funds and no criminal action was ever pursued against her. Accordingly, we find that appellant failed to establish that she was deprived of a liberty interest, without due process of law, as a result of Dennerll's statements to President Oslcamp.
Based on the foregoing, we find that appellant has failed to state a cause of action pursuant to Section 1983. Appellant's first assignment of error is therefore found not well-taken.
 Assignment of Error No. 2 Qualified Immunity Defense
Appellant argues in her second assignment of error that Dennerll should not be shielded from liability for civil damages in a 1983 action because his conduct violated clearly established federal rights of which a reasonable person would have known. Insofar as we have determined that appellant failed to establish any liability, pursuant to Section 1983, it is unnecessary to make any determination as to appellees' potential immunity. Accordingly, we need not address or consider the arguments relating to appellees' immunity defense. See Cooperman v. Univ. SurgicalAssoc. (1987), 32 Ohio St.3d 191, 198. Accordingly, we find appellant's second assignment of error not well-taken and denied as moot.
To the extent that appellant additionally argues that the SPBR decision or the Court of Claims decision does not have resjudicata, collateral estoppel, or issue preclusive effect, we find that, because appellant failed to establish that she was denied liberty or property interests without due process of law, these additional arguments are also found not well-taken and denied as moot.
 Assignment of Error No. 3 Genuine Issues of Material Fact
Appellant appears to assert that she did not receive a full and fair opportunity to litigate the negligence or fault issues before the SPBR. Specifically, she alleges a number of perceived problems with the SPBR proceedings in an attempt to persuade us that the SPBR hearing results were not reliable. The proper procedure for appealing a SPBR determination is by appealing it to the court of common pleas, pursuant to R.C. 124.34(B), which provides that the order of the SPBR is appealable in accordance with the provisions of R.C. Chapter 119. The matter before us is not an appeal from the SPBR, but a 1983 action. As such, appellant's arguments concerning the SPBR proceedings cannot be reviewed by this court. Appellant's third assignment of error is therefore found not well-taken.
 Conclusion
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
 PETER M. HANDWORK, J., JUDGE, RICHARD W. KNEPPER, P.J., JUDGE, CONCUR.
JAMES R. SHERCK, J., JUDGE, CONCURS AND WRITES SEPARATELY.
[1] Dennerll's October 31, 1990 memorandum to President Oslcamp stated as follows:
 "I believe at this point in the investigation we have exhausted all attempts to have Geneva Long cooperate with us in this investigation. It is clear, as stated in my memorandum of August 7, 1990, that Geneva Long has accepted criminal liability through her inaction to perform her required duties which she is capable of performing, including either a voluntary or an admission [sic] to perform an act or duty, and further possesses a requisite degree of culpability, that of a knowingly recklessness [sic] of her purpose is aware that her conduct has caused a certain result and was and still is reckless or negligent in that regard.
 "Further, she has chosen to ignore her responsibility and acceptable accounting procedures and practices required by the University thus allowing this situation to go on undetected for almost two years, resulting in over $70,000 in missing funds.
 "While at this point it is not possible to say who, in fact, removed the funds, Geneval [sic] Long through her inaction made it possible. Geneva Long has made statements to Detective Sergeant Chuck Lewis and myself that she in fact knew she was responsible for the funds but had stopped reconciling the funds and the amounts deposited herself without notifying Dean Miller.
"* * *
 "It is suggested that the next logical step in this investigation would be to present the information obtained to the Grand Jury of Wood County and subpoena Geneva Long to testify as to her knowledge and additional facts which she claims to have but refuses to divulge. The Grand Jury's purpose would be to review the facts in this matter. It is the opinion of the Wood County Prosecutor, Alan Mayberry, that there is sufficient evidence to indict Geneva Long at this time.
 "It is also suggested and has become very clear throughout this investigation that Geneva Long has not only refused to accept her responsibility and or accountability for her duties but to this day refuses to implement any and all recommendations made for the safety and security of the funds involved by either Dean Miller or myself (copies attached.) Thus she in fact should be removed from these duties at once. In addition I am again requesting, as in my August 7th memorandum, that all records, documents and ledgers used for the requested audit be maintained by the auditor and not the person who has refused to accept this responsibility and/or accountability."