NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 12-2046 & 12-2236

———————————

D & D ASSOCIATES, INC.
a New Jersey Corporation

                                        Appellant (12-2046)

v.

BOARD OF EDUCATION OF NORTH PLAINFIELD; THE VITETTA GROUP, INC.,
n/k/a/ Vitetta; BOVIS LEND LEASE INC; ROBERT C. EPSTEIN

                              Robert C. Epstein,
                                        Appellant (12-2236)

———————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-03-cv-01026)
District Judge: Honorable Mary L. Cooper

———————————

Submitted Under Third Circuit LAR 34.1(a)
November 19, 2013

Before: AMBRO, and SMITH, Circuit Judges
and O'CONNOR,* Associate Justice (Ret.)

(Opinion filed: January 8, 2014)

_____

* Honorable Sandra Day O'Connor, Associate Justice (Ret.) for the Supreme Court of the
United States, sitting by designation.

_____

OPINION

_____

AMBRO, Circuit Judge

Plaintiff D&D Associates, Inc. ("D&D"), a New Jersey contractor, entered into a variety of contracts for school renovation with defendant North Plainfield Board of Education (the "Board"). After relations soured, D&D sued the Board and the Board's attorney, Roger Epstein ("Epstein"), as well as the construction management company and architect the Board hired. D&D's claims covered a variety of contractual, tort, and civil rights claims. The District Court dismissed all counts of the complaint or granted summary judgment in favor of defendants. D&D appeals as to some counts of the complaint; Epstein cross-appeals as to two. On all issues properly before us, we affirm the District Court.

## I. Background

In 2001, the Board awarded construction contracts to D&D for the renovation and expansion of five schools. To fulfill its contractual bonding requirements, D&D obtained bonds from American Motorists Insurance Company ("the Surety"). The Surety and D&D entered into a General Indemnity Agreement ("GIA"). It contained a provision stating that, in the event of a default, D&D would "assign, transfer, and set over to Surety, all of their rights under all Bonded Contract(s), including . . . all claims and causes of actions against any parties to the Bonded Contract[.]" The Board entered into

2

contracts for the project with an architecture firm, Vitteta Group, Inc. ("Vittetta"), and a construction management firm, Bovis Lend Lease, Inc. ("Bovis").

Relations among the parties quickly broke down and, after repeatedly informing D&D of issues relating to the construction, Epstein, on behalf of the Board, sent the Surety a letter stating that D&D was in default in February 2002, but withdrew the notice a month later. Despite the withdrawal, between March and July 2003 the Board, after providing notice, terminated D&D from all contracts and demanded that the Surety fulfill the contractor's remaining obligations. The Board and the Surety entered into takeover agreements to facilitate the completion of all responsibilities.

During this time, the Surety began to decline D&D's requests for further large-scale bonding. From 2000 to 2003, D&D applied for prequalification, a New Jersey classification allowing a contractor to bid on school facilities projects. This application was approved each year until 2003, when D&D submitted an incomplete application that was deemed withdrawn. D&D asserts that because it had lost bonding capacity, it would not have been eligible for prequalification even with a complete application. It filed for Chapter 11 bankruptcy in August 2003, and its reorganization plan was approved in January 2005.

In March 2003, D&D filed its initial complaint in this action, charging the Board, Vitteta, Bovis, and Epstein with a variety of civil rights and tort claims. An amended complaint added additional claims. Between 2003 and 2012, the case went through extensive litigation at the District Court. This culminated in a March 2012 opinion that granted summary judgment for the Board on all remaining counts and for Epstein on

3

Count Two (stigma-plus reputational harm). The same order denied both Epstein's motion for summary judgment on Count Ten (tortious interference) and Count Eleven (defamation) and D&D's motion for summary judgment on various counts. Having disposed of all federal law claims, the District Court declined to exercise supplemental jurisdiction over Counts Ten and Eleven, both state law claims, and dismissed those counts against Epstein, Bovis, and Vitteta without prejudice. D&D appeals the grants of summary judgment in favor of the Board on several counts and in favor of Epstein on Count Two. Epstein cross-appeals the denial of his motion for summary judgment on Counts Ten and Eleven.

## II. Jurisdiction & Standard of Review

The District Court had jurisdiction over D&D's federal law claims under 28 U.S.C. § 1331 and supplemental jurisdiction over D&D's state law claims under 28 U.S.C. § 1367. We have jurisdiction over the appeal under 28 U.S.C. § 1291. We review summary judgment orders *de novo*, applying the same test as the district court, which states that "[s]ummary judgment is appropriate when the moving party is entitled to judgment as a matter of law and there is no genuine dispute of material fact." *Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 112 (3d Cir. 1996). Where we have jurisdiction to do so, we exercise plenary review over a denial of a motion for summary judgment. *See Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994).

## III. Analysis

### A. Count One: Property Seizure

In the first count of the amended complaint, D&D argues it was denied due process through the unlawful seizure of its property. The District Court granted summary judgment for both the Board and Epstein on this count in 2007. Although portions of D&D's opening brief appear to relate to this count, it has not been properly preserved on appeal.

D&D's opening brief does not request that this count be reinstated or at any point identify Count One specifically as being erroneously dismissed. Where the brief to us refers to property seizure, those arguments are entangled with contentions on other counts. In addition, the citation seemingly intended to indicate the property-seizure claim in the statement of issues corresponds to a section of the District Court's 2007 opinion concerning other claims, not Count One, meaning that the portion of the judgment appealed from is never identified. D&D's vague efforts are insufficient to place the issue before us, and we make no decision on the merits of this claim.

### B. Count Two: Stigma Plus

The second count of the amended complaint charges various defendants of making false statements that deprived D&D of its liberty interest in prequalification. The contractor argues that the District Court erred in dismissing this count against the Board and not reinstating this count against Epstein.[1]

---

[1] In a previous order, the District Court granted summary judgment for Epstein on Count Two.

5

Civil rights claims under 42 U.S.C. § 1983 based on reputational harms are known as "stigma-plus" claims. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). In order to make out such a claim, "a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Id.* (emphasis in original). In other words, reputation damage is not actionable unless "it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989). While stigma-plus analysis is most common in public employment cases, *see, e.g.*, *Ersek v. Twp. of Springfield*, 102 F.3d 79 (3d Cir. 1996), it can also be used in other contexts, *see Baraka v. McGreevey*, 481 F.3d 187, 208-10 (3d Cir. 2007).

To establish stigma, the relevant statements by the defendant must be both made publicly and false. *Hill*, 455 F.3d at 236. Here, D&D asserts that the Board and Epstein falsely claimed it was in default when no formal default proceedings had occurred. Because of the disagreement among the parties as to whether D&D was actually in default, the District Court correctly concluded that "there is at least a factual dispute between the parties" over whether the relevant statements were false. This dispute is sufficient for D&D to avoid summary judgment on the stigma prong of its stigma-plus claim.

The second, or "plus," requirement refers to the additional deprivation needed to transform a stigmatizing statement into a § 1983 claim. D&D suggests that the loss of its status as a prequalified contractor satisfies this requirement. The District Court concluded that prequalification is not an interest protected by due process, a conclusion that is at

6

least somewhat in tension with precedent. *See Berlanti v. Bodman*, 780 F.2d 296, 300 (3d Cir. 1985) (noting that New Jersey recognizes "a property interest in not being arbitrarily debarred" from public contracts that triggers "some procedural protection under the due process clause").

We need not determine whether a protected interest in prequalification exists because the connection between the alleged stigma and the loss of prequalification is too remote for stigma-plus liability against either the Board or Epstein. By D&D's own argument, the alleged reputational attacks affected prequalification only indirectly, by causing the Surety to decline further bonding. Even if those indirect effects were sufficient, the Surety's decisions were attributable to other factors, including liens from D&D's subcontractors, the size of D&D's assets, and concerns about D&D's ability to handle existing projects.

Moreover, in 2003, the only year D&D applied for and did not receive prequalification, its application was missing necessary signatures, notarizations, affidavits, and financial records. It did not respond to requests to cure these deficiencies and, as a result, the application was deemed withdrawn. D&D has not applied for prequalification since 2003. The contractor's own actions in failing to apply properly for prequalification therefore intervened between the actions of the defendants and prequalification not being renewed. Such an attenuated connection is too strained to support a stigma-plus claim. *See WMX Techs., Inc. v. Miller*, 80 F.3d 1315, 1320 (9th Cir. 1996) ("[T]he 'stigma-plus' test requires that the defamation be accompanied by an injury directly caused by the Government, rather than an injury caused by the act of some

7

third party."). Hence the loss of prequalification here is insufficient to raise a genuine question of material fact regarding the stigma-plus claim, and the District Court did not err in granting summary judgment on this count.

### C. Counts Three & Four: First Amendment Retaliation

D&D argues the District Court erred in granting summary judgment for the Board on the contractor's § 1983 claims of retaliation for exercising its First Amendment rights. The amended complaint includes two such claims: Count Three charges that the defendants issued default letters in retaliation for D&D's response to delays in the project schedule; Count Four alleges that D&D's contracts with the Board were terminated in retaliation for this lawsuit.[2]

To prevail on a First Amendment retaliation claim under § 1983, "a plaintiff must prove '(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation.'" *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)). Where the speaker is a government employee, that person "must show that he or she spoke *as a citizen* on a matter of public concern." *Borough of Duryea, Pa., v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011) (emphasis added). This test, "adjusted to weigh the government's interests as contractor rather than

---

[2] In its appellate brief, D&D alleges the Board suppressed a newspaper article and retaliated against D&D for "protesting the Board's unlawful attempt to proceed without building permits." Because these arguments were apparently not raised before the District Court, they are waived and not before us. *See United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005) ("It is well settled that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances.").

as employer," applies to government contractors like D&D. *Board of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 673 (1996).

Count Three fails on the first prong because the speech in question was in D&D's capacity as a contractor, not a citizen, and therefore not constitutionally protected. D&D claims it was retaliated against for refusing to "make false statements for public distribution that the Projects were on schedule" and for actually making "statements that defendants themselves had caused delays; for D&D's requests for extensions of time and other compensation; and for D&D's attempt to meet with other prime contractors affected by defendant's improper actions to form a coordinated attempt to seek scheduling adjustments and other redresses." The District Court concluded that this speech was on a matter of public concern, but was made (or not made) in D&D's employee capacity and not protected by the First Amendment. On appeal, D&D does not challenge the conclusion that the relevant speech was in its capacity as an employee. Because there is no underlying constitutionally protected speech, it is unnecessary to reach the other steps. Therefore, the District Court did not err in granting summary judgment for the Board on Count Three.

Count Four, charging that the Board retaliated against D&D for initiating this litigation, has not been properly preserved for appeal. As discussed above with regard to Count One, appellants are deemed to have abandoned a claim on appeal unless, in their opening brief, they identify that claim in the statement of issues and present arguments in support of their position on that claim. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) ("[C]asual mention of an issue in a brief is cursory treatment insufficient to

9

preserve the issue on appeal."). Here, D&D requested in its conclusion that this count be reinstated against the Board but made no arguments regarding retaliation for initiating litigation anywhere in the brief. Nor, for that matter, did D&D specifically refer to retaliation for litigation in its statement of the issues. While D&D's reply brief contains some specific references to this claim, mention in a reply brief does not remedy the absence of issues in the initial appellate brief. *See Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 204-05 n. 29 (3d Cir. 1990) ("As a general matter, the courts of appeals will not consider arguments raised on appeal for the first time in a reply brief."). This argument is abandoned, and we need not address it here.

### D. Count Eight: Breach of Contract

Count Eight of the complaint alleged contractual breaches by the Board. The District Court granted summary judgment to the Board on the ground that the claim had been assigned to the Surety. On appeal, D&D argues that the grant of summary judgment was inappropriate for several reasons, but does not challenge the District Court's general reasoning.

First, D&D charges that the District Court improperly ignored relevant state law, specifically a series of cases under the New Jersey Trust Fund Act ("NJTFA"), N.J. Stat. Ann. § 2A:44-148. This line of argument is precluded. In granting summary judgment on Count Seven, the District Court specifically concluded that the NJTFA does not apply in this case because, under New Jersey law, no trust had been created. Because D&D has not appealed the District Court's ruling on Count Seven, *res judicata* precludes this

10

argument. *See Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 396 n. 24 (3d. Cir. 1994).

Second, D&D argues that the District Court's grant of summary judgment violated Federal Rule of Civil Procedure 17(a)(3) because it did not allow time for the real party in interest to "ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). Because this claim appears not to have been raised at the District Court, it is waived and not properly before us. *See United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005).

Third, D&D argues that *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366 (1949), controls here and requires the conclusion that D&D was entitled to pursue the breach of contract claim in its own name. *Aetna* is inapplicable because it concerns an entirely dissimilar fact pattern. In that case, the Supreme Court held that where an insurer has only partially paid a claim and is therefore a partial subrogee to the insured, both the insured and the insurer may bring actions in their own names for the portions of the claim they respectively hold. *See id.* at 380-81. Here the District Court concluded that D&D's rights were wholly, not partially, assigned to the Surety. D&D has not argued, nor even clearly suggested, that the ruling was in error for concluding that the contractual rights were wholly assigned. *Aetna* and cases following it thus provide no reason to question the District Court's conclusion.

Fourth, D&D argues that its confirmed Reorganization Plan foreclosed the District Court's conclusion that the Surety is the real party in interest. As the District Court specifically noted, this argument was raised for the first time in D&D's motion to alter judgment, which was interpreted as a motion for reconsideration. Thus, despite the fact

11

that the Reorganization Plan was filed in 2004 and the Board first sought summary judgment because the Surety was the real party in interest in 2006, D&D did not raise this argument until 2012.

The Reorganization Plan argument is effectively an appeal of the denial of the motion for reconsideration. This motion can only be granted if the party seeking to alter the judgment can show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). As the District Court concluded, there was neither an intervening change in law nor new evidence, meaning only a "clear error of law or fact" or the prevention of "manifest injustice" could justify granting the motion. Neither occurred here. D&D cannot use a motion for reconsideration to avoid the consequences of failing, without providing any explanation, to raise this argument in the six years this issue has been under litigation. *See United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010) ("Such motions are granted for 'compelling reasons,' such as a change in the law which reveals that an earlier ruling was erroneous, not for addressing arguments that a party should have raised earlier." (internal quotation marks omitted) (quoting *Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009))).

For all these reasons, the District Court did not err in granting summary judgment for the defendants on Count Eight, nor did it err in denying the motion for reconsideration.

**E. Counts Ten and Eleven: Tortious Interference and Defamation**

Epstein cross-appeals on Count Ten, which charged him and other defendants with tortious interference with D&D's business, and Count Eleven, which alleged that he and other defendants defamed D&D. The District Court declined to exercise supplemental jurisdiction over these state law claims and dismissed them without prejudice as to Epstein, Bovis, and Vitteta. Epstein contends that the District Court erred in doing so because both claims are barred by the New Jersey absolute litigation privilege for attorneys and the Board's immunity ought to have been extended to him.

"[F]ederal appellate courts have jurisdiction to hear appeals only from 'final decisions' of the district courts. Accordingly, we normally do not entertain appeals from a district court order denying a motion for summary judgment because such orders do not put an end to the litigation." *Rivas v. City of Passaic*, 365 F.3d 181, 191 (3d Cir. 2004) (citation omitted). Epstein's appeal is particularly unusual because these counts have been dismissed against him and D&D has not appealed their dismissal. He apparently seeks, through this cross-appeal, to preclude the bringing of these claims against him in state court through a grant of summary judgment in his favor.

Epstein argues that, because a dismissal without prejudice where the case cannot be reinstated in federal court is equivalent to a dismissal with prejudice, the decision is final and denial of summary judgment is reviewable. *See Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 460 F.3d 470, 477 (3d Cir. 2006) ("[A] case dismissed without prejudice that cannot be reinstituted is in the same position as a case dismissed with prejudice in that both classes of cases have reached finality."). This principle, however, is drawn from

13

cases assessing the finality of dismissals without prejudice as they relate to the finality of orders on other issues, not interlocutory orders on the same issue. *See, e.g.*, *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991).

While the dismissals without prejudice of Counts Ten and Eleven are final, that does not render the decision to deny summary judgment directly reviewable. Reviewing the denial of summary judgment would impermissibly end run the District Court's discretionary decision declining supplemental jurisdiction. By statute, a "district court[] may decline to exercise supplemental jurisdiction over a claim" when it "has dismissed all claims over which it has original jurisdiction," precisely as occurred here. 28 U.S.C. § 1367(c). Moreover, by Epstein's own arguments, deciding these claims would require determining the effect of New Jersey's absolute litigation privilege, which shields attorneys and parties from defamation liability based on statements made in judicial or quasi-judicial proceedings. *See, e.g.*, *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995). The application of this privilege represents a significant and complex state law question that suggests an additional reason based on statute to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim raises a novel or complex issue of State law[.]").We review the decision not to exercise supplemental jurisdiction only for abuse of discretion. *See Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 172 (3d Cir. 2009). The District Court therefore did not abuse its discretion in declining to exercise supplemental jurisdiction over these claims.

14

\* \* \* \* \*

In short, the District Court did not err in granting summary judgment on any count properly before us on appeal, nor did it abuse its discretion in dismissing without prejudice the remaining state law counts.[3] We affirm its judgments.

---

[3] Because they are now moot, we deny Epstein's motion to supplement the appendix and D&D's motion to combine its briefs.